```
                    UNITED STATES DISTRICT COURT        FILED
                      DISTRICT OF CONNECTICUT
                                                      2004 MAR -1  P 3:06

MARGARET KILLIP,                        :
                                        :             U.S. DISTRICT COURT
        Plaintiff,                      :                HARTFORD, CT.
                                        :
        v.                              :     CASE NO.  3:02CV1494(RNC)
                                        :
SCANDINAVIAN MARINE CLAIMS              :
OFFICE, INC., SCANDINAVIAN              :
UNDERWRITERS AGENCY, SCUA               :
AMERICAS, INC., SCUA                    :
HOLDINGS, B.V. and NORWEGIAN            :
HULL CLUB,                              :
                                        :
        Defendants.                     :
```

RECOMMENDED RULING ON DEFENDANT SMCO'S MOTION
FOR STAY PENDING ARBITRATION

The plaintiff, Margaret Killip ("Killip"), commenced this action against Scandinavian Marine Claims Office, Inc. ("SMCO"), SCUA Americas, Inc. ("SCUA"), Norwegian Hull Club ("NHC") Scandinavian Underwriters Agency and SCUA Holdings, B.V.[1] Killip alleges that she was denied certain retirement benefits to which she is entitled. Pending before the court is the defendant SMCO's motion for stay of the plaintiff's claims pending arbitration. (Doc. #20.) For the reasons set forth below, the court recommends that SMCO's motion be GRANTED in part and DENIED in part.

I.   Factual Background

Killip worked for defendant SMCO, a maritime claims adjustment office, until she retired in 2001. (Compl. ¶¶8-9.) Killip alleges

---

[1] Scandinavian Underwriters Agency and SCUA Holdings, B.V. have not been served. (Doc. #21 at 2.)

that SCUA, a Delaware corporation which maintains a place of business in Florida, is the "successor to SMCO and its alter ego." (Compl. ¶5.) She further alleges that NHC, a corporation domiciled in Norway, conducted business through its subsidiaries SMCO and SCUA. (Compl. ¶7.)

As a former SMCO employee, Killip is covered by a qualified pension plan covered under ERISA, 29 U.S.C. § 1001 et seq. (Compl. ¶10.) Killip also is covered by a "non-qualified pension plan," a supplemental or "wrap around" benefit plan available only to certain senior management personnel. (Compl. ¶11.) The non-qualified pension plan is set forth in a written agreement between SMCO and Killip dated June 13, 1995. (Doc. #22, ex. c.) Paragraph 6.4 of the non-qualified pension plan contains an arbitration clause, which provides:

> Any disagreements between the Company and the Employee in regard to this Agreement shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect as of the date of filing of the arbitration.

Killip contends that she was denied benefits under both the qualified and non-qualified pension plans. She alleges that SMCO, at the direction of NHC, decided to close the SMCO office and change the company's name to SCUA. (Compl. ¶19.) SMCO, at the direction of SCUA and NHC, improperly divested itself of all of its assets, transferring them to SCUA and/or NHC. (Compl. ¶20.) Killip was told that as a result of the SMCO's insolvency, she would not be paid benefits under the non-qualified pension plan.

(Compl. ¶21.) Killip alleges that SMCO, despite contrary representations, also did not credit her prior service with a predecessor company and did not use a previously agreed upon rate or multiplier in calculating her benefits under the qualified pension plan. (Compl. ¶22, Killip Aff. ¶29.) Killip alleges that SMCO, SCUA, NHC, Scandinavian Underwriters Agency and SCUA Holdings, B.V. are liable for payment of her retirement benefits. Specifically, her complaint alleges that: SMCO violated ERISA (count 1); SMCO breached the non-qualified pension plan (count 2); Killip detrimentally relied upon the defendants' promises regarding the amount of benefits she would receive upon retirement (count 3); the defendants violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq. (count 4); the defendants fraudulently transferred SMCO's assets (count 5); SCUA and NHC tortiously interfered with Killip's contractual relations with SMCO (count 6); SCUA and/or NHC are liable to Killip as successors to SMCO (count 7); Killip is entitled to a declaratory judgment that SCUA and NHC are obligated to pay her retirement benefits under both plans (count 8); the defendants operated SMCO despite its insolvency, which was kept hidden from SMCO's employees and creditors (count 9); and SCUA and NHC are liable to the plaintiff because SMCO was a mere instrumentality (count 10).[2]

---

[2] Defendants SMCO and SCUA have asserted counterclaims against Killip alleging nonpayment of a promissory note. (Doc. #7.) SMCO filed a third party complaint against Tom Ostensen, the former president of SMCO, for contribution and indemnification. (Doc.

II. <u>Discussion</u>

The defendant SMCO argues that all of the plaintiff's claims should be stayed pending arbitration. For purposes of this motion, Killip's claims can be divided into three categories: claims against SMCO regarding the non-qualified pension plan, claims against SMCO regarding the qualified pension plan and claims against the non-signatories -- SCUA and NHC -- to the arbitration agreement.[3]

The plaintiff concedes that some of her claims are arbitrable.[4] (Doc. #24 at 4.) Notwithstanding, she argues that the court should deny SMCO's motion in its entirety. She claims that the court should "allow this action to go forward to ascertain" the liability of the other defendants as well as to resolve the claims regarding the qualified pension plan (<u>i.e.</u>, the proper years of service and the appropriate multiplier). (Doc. #24 at 8; Killip Aff. ¶¶29-32.)

"Under the Federal Arbitration Act ('FAA'), a district court

---

#34.)  The allegations in this case are similar those in <u>Scandinavian Marine Claims Office Inc. v. Ostensen</u>, 3:02cv678(RNC).

[3] The arbitration clause is contained in the non-qualified pension plan. Pursuant to the arbitration clause, SMCO and Killip agreed to arbitrate disagreements regarding the non-qualified pension plan. SMCO is the only defendant that is a party to the non-qualified pension plan.

[4] The plaintiff, however, neither identifies which of her claims are arbitrable nor explains why the arbitrable claims should not be subject to a mandatory stay pursuant to § 3. The plaintiff does not argue that any of her claims as to non-signatory defendants are arbitrable at this juncture.

4

must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding. See 9 U.S.C. § 3.[5] The FAA leaves no discretion with the district court in the matter." McMahan Securities Co. L.P. v. Forum Capital Markets L.P., 35 F.3d 82, 86 (2d Cir. 1994)(footnote added). "Courts must act to enforce arbitration agreements . . . even though arbitration may sometimes result in 'piecemeal resolution.'" American Shipping Line, Inc. v. Massan Shipping Industries, Inc., 885 F. Supp. 499, 502 (S.D.N.Y. 1995)(quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983)).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985). Accordingly, the court cannot, as the plaintiff requests, decline to stay claims that are

---

[5]Section 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

5

referable to arbitration pursuant to the agreement.

In resolving SMCO's motion to stay pending arbitration, the court must determine whether SMCO and Killip agreed to arbitrate; the scope of that agreement; and if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration. Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987). Neither SMCO nor Killip contests the validity of the arbitration clause in the non-qualified plan. The next inquiry is whether Killip's claims are within the scope of that clause.[6] To properly inquire as to the scope of the arbitration clause, the court first should classify the particular clause as either broad or narrow. Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 244 (2d Cir. 2001). The clause at issue, requiring arbitration of "[a]ny disagreements between the Company and the Employee in regard to this Agreement," is broad. See Specht v. Netscape Communications Corp., 306 F.3d 17, 35 (2d Cir. 2002) (holding that "all disputes relating to this Agreement (excepting any dispute relating to intellectual property rights)" was a broad arbitration clause). "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the

---

[6] The plaintiff offers no analysis as to whether, and to what degree, each particular claim falls within the scope of the arbitration clause.

6

claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Louis Dreyfus Negoce S.A., 252 F.3d at 244. Some of the plaintiff's claims are arbitrable whereas others are not. "If some claims are non-arbitrable, while others are arbitrable, then [the court] will sever those claims subject to arbitration from those adjudicable only in court. Indeed, there is no reason why, in a proper case, we cannot sever even part of a claim, where that claim raises both arbitrable and non-arbitrable issues." Collins & Aikman Prod. Co. v. Building Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995). Mindful of these principles, the court examines the plaintiff's claims.

The plaintiff alleges in count one that SMCO violated ERISA because it "repudiated its obligations to Killip under the qualified and non-qualified pension plans." (Compl. ¶27.) Specifically, SMCO allegedly manipulated the conduct of independent auditors as well as the information and instructions it provided them in order to "present false and/or misleading statements of benefits" due to Killip. (Compl. ¶28.) To the extent that this claim addresses the non-qualified pension plan, it is within the scope of the arbitration clause and subject to a mandatory stay under § 3.[7] The plaintiff alleges in count two that SMCO acted on

---

[7]In its reply brief, SMCO states, without discussion, that the plaintiff's claims directed at SMCO as to the qualified pension plan "are inextricably linked" to the non-qualified pension plan and "should be arbitrated or at a minimum, stayed." See doc. #26 at 3. Despite the breadth of the arbitration provision, the arbitration clause does not reach the qualified pension plan benefits, which are calculated without regard to the non-qualified pension plan benefits.

7

behalf of SCUA and NHC in its "contractual dealings." (Comp. ¶33.) The plaintiff alleges that the "defendants have anticipatorily repudiated" the non-qualified pension plan "by stating that they will not pay the retirement benefits due under [it]." (Compl. ¶34.) To the extent that the plaintiff alleges that SMCO breached the non-qualified pension plan, this claim is arbitrable. In count three, entitled "detrimental reliance," the plaintiff alleges that she "relied upon the promises and representations made by SMCO, SCUA and NHC that the qualified and non-qualified plans would fund her retirement" as provided in the plans. (Compl. ¶37.) To the extent that the plaintiff alleges that she relied on SMCO's representations as to her benefits under the non-qualified pension plan, the claim is arbitrable. In count four, the plaintiff alleges that the defendants' "false and misleading statements regarding the qualified and non-qualified plans were deceitful, fraudulent and unfair" within the meaning of CUTPA. To the extent that the plaintiff alleges that SMCO made misleading statements about the non-qualified pension plan in violation of CUTPA, the claim is arbitrable. The plaintiff alleges in count five that "SMCO, SCUA and NHC conspired to convey, transfer and/or secrete the assets of SMCO to SCUA and NHC, with the result being that SMCO was unable to pay its debts as they matured," including "the non-qualified plan." (Compl. ¶45.) To the extent that the plaintiff alleges that SMCO made fraudulent conveyances and transfers to underfund the non-qualified pension plan, the claim is arbitrable. (Compl. ¶46.)

Counts six through ten are directed at SCUA and NHC.[8] These claims, directed at defendants who are not parties to the arbitration agreement, are not arbitrable and are not subject to a mandatory stay pursuant to § 3. See Citrus Marketing Bd of Israel v. J. Lauritzen A/S, 943 F.2d 220, 224 (2d Cir. 1991) (nonparties to arbitration agreement are not entitled to mandatory stay under 9 U.S.C. § 3).

Having concluded that some, but not all, of the claims in the case are arbitrable, the court next must determine whether to stay pending arbitration the remaining claims, i.e., the non-arbitrable claims as to SMCO regarding the qualified pension plan and the claims against the other defendants (SCUA and NHC). "[D]istrict courts, despite the inapplicability of the FAA, may stay a case pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997) (internal quotation marks omitted). The party seeking the stay "bears the burden of demonstrating that such a stay is justified." Id.

SMCO argues that the plaintiff's claims against it regarding

---

[8]Count six alleges that SCUA and NHC tortiously interfered with Killip's contractual relations with SMCO. (Compl. ¶52.) Count seven alleges that SCUA and/or NHC are liable to Killip as successors to SMCO for SMCO's obligations under the qualified and non-qualified pension plans. (Compl. ¶56.) Counts eight and ten allege that SCUA and NHC are liable for the plaintiff's retirement benefits because SMCO was a "mere instrumentality of theirs." Count nine alleges that SMCO was kept in operation despite being insolvent "to service the needs of defendant NHC, among others." (Compl. ¶63.)

the qualified pension plan should be stayed because they are of questionable merit. "The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket. . . . Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 856 (2d Cir. 1987). On the present record, the court cannot conclude that the arbitrable claims predominate the lawsuit and the non-arbitrable claims regarding the qualified pension plan are of questionable merit. Accordingly, the non-arbitrable claims as to SMCO should not be stayed.

SMCO next argues that the plaintiff's claims against SCUA and NHC should be stayed because they are derivative of SMCO's liability. SMCO cites Harvey v. Joyce, 199 F.3d 790 (5th Cir. 2000) in support of its argument that the court should stay the claims against SMCO and SCUA. In Harvey, the plaintiff shareholders brought suit against Joyce, a record owner of stock, and CTC, a corporation. Although the plaintiffs and Joyce were parties to the arbitration agreement, CTC was not. The district court denied Joyce and CTC's motion to stay. On appeal, the Court of Appeals concluded that all claims asserted against Joyce were arbitrable pursuant to the arbitration agreement. The court further concluded that CTC, despite being a non-signatory, was entitled to a stay pending arbitration of the claims against Joyce under 9 U.S.C. § 3, because "a suit against CTC could have a

10

critical impact in the Joyce arbitration. . . . If CTC were forced to try the case, the arbitration proceedings would be both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration. . . . Therefore, we fail to see how litigation could proceed as to CTC without adversely affecting Joyce's right to arbitrate." 199 F.3d at 795. The Fifth Circuit subsequently construed Harvey and observed that because of the "exceptional circumstances" presented in that case, "we diverged from our general rule requiring party status for the mandatory stay provision to apply, thereby creating tension in our case law." Adams v. Georgia Gulf Corp., 237 F.3d 538, 540 (5th Cir. 2001). The court clarified that the "concern" it had in Harvey "was not the impact on CTC but the right of the party to the arbitration to arbitrate meaningfully." 237 F.3d at 541.

Harvey does not compel the conclusion that the claims against the non-signatories must be stayed. Although SMCO argues that it is not efficient to litigate the liability of the other defendants without first determining SMCO's liability in the arbitration, it, unlike the defendant Joyce in Harvey, does not argue that its ability to arbitrate meaningfully will be affected if a stay is not granted.

III. Conclusion

For these reasons, the court recommends that the plaintiff's motion to stay pending arbitration (doc. #20) be GRANTED in part and DENIED in part. The court recommends that the plaintiff's motion for a mandatory stay pursuant to 9 U.S.C. § 3 be granted as

11

to counts 1 - 5 as to SMCO regarding the non-qualified pension plan as set forth in this opinion. The court further recommends that the defendant's motion for a discretionary stay pursuant to the court's inherent power to manage its docket be denied as to the remaining claims against SMCO and all the claims against the other defendants.

Any party may object to this recommended ruling within ten days after being served with the report and recommendation. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the Local Rules for United States Magistrates, United States District Court for the District of Connecticut. Failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision. United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

Dated at Hartford, Connecticut this 1st day of March, 2004.

Donna F. Martinez
United States Magistrate Judge